# Illinois Official Reports

## Appellate Court

---

### *Bujnowski v. Birchland, Inc.*, 2015 IL App (2d) 140578

---

| | |
|---|---|
| Appellate Court Caption | KRYSZTOF BUJNOWSKI, Plaintiff-Appellant, v. BIRCHLAND, INC., d/b/a Fourth Lake Resort, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0578 |
| Filed | July 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-L-915; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Masha A. Chepov, of Chepov & Scott LLC, of Chicago, for appellant.<br><br>Gregory J. Fraterrigo, of Law Offices of Gregory J. Fraterrigo, of Chicago, for appellee. |

JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Hutchinson and Zenoff concurred in the judgment and opinion.


# OPINION


¶ 1        Plaintiff, Krysztof Bujnowski, sued defendant, Birchland, Inc., doing business as Fourth Lake Resort, for negligence. Plaintiff had dived into a lake at defendant's resort, injuring himself. Defendant moved for summary judgment (735 ILCS 5/2-1005(c) (West 2012)) on the basis that it had owed plaintiff no duty. The trial court granted the motion. Plaintiff appeals. We affirm.

¶ 2        Plaintiff's complaint alleged as follows. Defendant operates a recreational area that charges admission. On July 1, 2012, while lawfully on defendant's property, plaintiff dived off a pier into a lake and broke his neck. At the time, defendant had no employees monitoring the area. Defendant had been negligent for failing to supervise or train customers properly on the use of the area and for failing to warn them of the dangers of using the area.

¶ 3        Defendant moved for summary judgment, contending that it had owed plaintiff no duty, because the danger of diving into water is open and obvious. Defendant cited *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435 (1996), and *Dowen v. Hall*, 191 Ill. App. 3d 903 (1989).

¶ 4        Defendant's motion attached a copy of plaintiff's deposition, in which he testified as follows. He was six feet, four inches tall. An experienced swimmer, he knew that water levels in a lake can fluctuate. Before July 1, 2012, plaintiff had been to defendant's resort twice, including two or three weeks earlier. On those occasions, he walked along the lake's shore and noticed the pier but did no diving and could not tell how deep the water was.

¶ 5        Plaintiff testified that, on July 1, 2012, he did not see any signs prohibiting diving. He had no idea how deep the water was where he made his dive. He never tried to measure it and, because the water was dirty, he could not tell by looking into it. He did not ask anybody how deep the water was. Three of plaintiff's friends were with him at the time. One of them, Mariusz Koziara, who was about six feet tall, successfully took a flat dive off the pier into the water shortly before plaintiff did. Plaintiff saw other people dive off the pier before he did. Although he had no idea how deep the lake was, he thought, judging by the people he had seen diving earlier, that it was deep enough.

¶ 6        Plaintiff testified that he took a flat dive off the edge of the pier. His hands, followed by his forehead, struck the bottom of the lake, and he slid through the mud. Plaintiff did not feel any rocks or debris. He managed to return to the pier but ended up with serious injuries.

¶ 7        Defendant's motion also attached a set of photographs of the lake and the area of the accident. Included was a photograph of a large sign on defendant's property, headed "NOTICE" and listing "Beach Regulations." These included, "Diving in shallow water is not permitted."

¶ 8 Plaintiff responded to the summary-judgment motion as follows. As a paying customer, he had been defendant's invitee. *Dowen* was inapposite because there the plaintiff, who had been injured by diving into a body of water, had been a mere licensee, so that the defendants had owed him only the duty to warn him of concealed defects of which they had known. Here, as plaintiff had been an invitee, defendant was liable for any injury caused by its failure to exercise reasonable care to protect him against a condition of which defendant (1) knew or should have known; (2) should have realized posed an unreasonable risk; and (3) should have expected that plaintiff would not discover or protect himself against. See Restatement (Second) of Torts § 343, at 215-16 (1965). Also, even had the danger been known or obvious to plaintiff, defendant owed him a duty if it should have anticipated the harm anyway. See *id.* § 343A(1), at 218.

¶ 9 Plaintiff argued that defendant owed plaintiff a duty to warn him of or otherwise protect him from the danger of diving into the lake. Plaintiff contended that "the issue [was] not whether the condition was open and obvious to the invitee, but whether it was open and obvious to the possessor." Plaintiff reasoned that the law imposed a duty upon defendant because defendant reasonably could have foreseen that someone would dive off the pier into the water and defendant could easily have posted warning signs in the vicinity of the pier. Defendant, though, had merely placed one small warning on a sign near its entrance gate.

¶ 10 In reply, defendant argued as follows. The invitee/licensee distinction was abolished in 1984 by the Premises Liability Act (Act) (740 ILCS 130/1 (West 2012)), under which a possessor of land owes any nontrespasser a duty of reasonable care. *Dowen* thus was still apposite for its holding that the danger inherent in diving into a body of water is open and obvious. Further, although an open-and-obvious danger does not, in itself, bar a duty (see *Ward v. K mart Corp.*, 136 Ill. 2d 132, 145 (1990)), plaintiff had no basis to raise *Ward*'s exception to the rule of nonliability: the "distraction" exception, under which a defendant has a duty if he can reasonably foresee that the plaintiff's attention will be taken off the condition (*id.* at 149, 153-54).

¶ 11 The trial court granted defendant summary judgment and denied plaintiff's motion to reconsider. On appeal, plaintiff raises various, somewhat disjointed, arguments for reversal.

¶ 12 Summary judgment is proper when the pleadings, depositions, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). Our review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To prevail in a negligence action, a plaintiff must plead and prove (1) that the defendant owed him a duty; (2) that the defendant breached that duty; and (3) that an injury proximately resulted from that breach. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 434 (1990). The existence of a duty is a question of law that may be decided by summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

¶ 13 In *Dowen*, the court addressed facts essentially similar to those presented here. In 1981 (before the Act took effect), the plaintiff, an adult, was injured when he made a flat dive off a pier into a muddy lake located on the defendants' property. At the time, the defendants had known that the water was only about 3½ feet deep, 4 to 6 inches less than usual. *Dowen*, 191 Ill. App. 3d at 906. In his complaint, the plaintiff claimed alternatively that (1) he had been an invitee, and the defendants had negligently failed to warn him; and (2) he had been a

- 3 -

licensee, and the defendants' failure to warn had been willful and wanton misconduct. The defendants received summary judgment on both counts. *Id.*

¶ 14    The appellate court affirmed. The court held first that the plaintiff had been the defendants' licensee, not his invitee, and that, as a consequence, the defendants had owed him only the duty to warn him of concealed defects of which the defendants knew. *Id.* at 906-07. The court then held that this duty had not been triggered, because the facts "demonstrate[d] as a matter of law that the danger of paralysis resulting from a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult." *Id.* at 907. "[A] reasonable adult in plaintiff's position would recognize that an attempt to execute a head-first flat dive into the lake, without prior awareness of the depth of the waters, might result in severe injury from hitting one's head on the lake bottom." *Id.*

¶ 15    Thus, *Dowen* held that the test of openness and obviousness was not what the plaintiff actually knew at the time, but what he had reason to suspect and could have learned. The very character of the open body of water provided the warning of danger, obligating the plaintiff to inquire further or suffer the consequences. To invoke the open-and-obvious rule, the defendants did not need to prove that the plaintiff actually knew the depth of the water. Also, as long as the condition was open and obvious, what the defendants knew about the specific condition of the property at the time was not pertinent. That the defendants actually knew that the water was shallower than usual did not matter, because the plaintiff was charged with knowing that the depth of the water was uncertain; therefore, he proceeded at his peril.

¶ 16    *Dowen*'s facts are of course strikingly similar to the facts here. However, *Dowen*'s facts predated the Act, so the appellate court relied on the distinction between a licensee, to whom a property owner owes only a limited duty to avoid willful and wanton misconduct, and an invitee, to whom is owed a broader duty of due care. Thus, that *Dowen* held that the defendants there owed no duty to the plaintiff does not establish that defendant here owed no duty to plaintiff–even assuming that the governing case law has changed in no other respect. Nonetheless, *Dowen* does hold that the danger of executing a flat dive into a lake of unknown depth is open and obvious. That much of *Dowen*, as we shall note, retains its vitality.

¶ 17    In *Ward*, the supreme court applied the open-and-obvious rule to a claim for ordinary negligence. The plaintiff was injured when he walked into a concrete post located just outside a customer entrance to the defendant's store. The jury found for the plaintiff, but the trial court granted the defendant a judgment *n.o.v.* The appellate court affirmed. The basis of the judgment was that, because the risk of colliding with the post was open and obvious, the defendant owed the plaintiff no duty. *Ward*, 136 Ill. 2d at 135-36. The supreme court reversed, holding that the defendant's duty of due care was not defeated by the open-and-obvious rule.

¶ 18    The *Ward* court first rejected the categorical rule that "an owner or occupier of land has no duty under any circumstances" to protect entrants from risks that are open and obvious. *Id.* at 146. Under the Act, and at least "nominally" under the common law, the duty is ultimately one of "reasonable care." *Id.* at 147. Thus, instead of applying a simple rule of no duty for any open-and-obvious risk, a court should begin by inquiring whether, even though a danger is open and obvious, the risk of injury is still reasonably foreseeable. *Id.* at 149-50 (citing Restatement (Second) of Torts § 343(A), at 220 (1965)). The risk can be reasonably

foreseeable when the defendant has reason to expect that the plaintiff's attention might be distracted, so that he will not discover, or will forget, what is obvious. *Id.* (citing Restatement (Second) of Torts § 343(A) cmt. f, at 220 (1965)).

¶ 19     The court then explained that, although the distraction exception is pertinent to the application of the open-and-obvious rule, and thus to the reasonable foreseeability of injury, whether to impose a duty must be based not only on "[(1)] whether an injury was reasonably foreseeable" but also on "[(2)] the likelihood of injury," "[(3)] the magnitude of the burden of guarding against the injury, and [(4)] the consequences of placing that burden upon the defendant." *Id.* at 151; see *id.* at 140-41. Applying the foregoing test, the court held first that the distraction exception applied and thus the plaintiff's injury had been reasonably foreseeable. *Id.* at 153-54. Also, the burden of guarding against the injury was slight: the defendant could easily have put up a warning. *Id.* at 156. Thus, the defendant had owed the plaintiff a duty, and a judgment based on the jury's verdict was required. *Id.* at 157.

¶ 20     We now turn to *Bucheleres*, which, unlike *Dowen* but like *Ward*, was governed by the Act's unitary standard of care. The plaintiffs in two consolidated cases were injured by diving off concrete seawalls into Lake Michigan. The defendant, the Chicago Park District (District), prohibited diving off the seawalls and had posted some signs and otherwise notified the public of the prohibition. *Bucheleres*, 171 Ill. 2d at 440-41. Nonetheless, the plaintiffs contended that the District owed, and had breached, a duty to warn them of the dangers of diving into the shallow water. *Id.* at 439. In each case, the District moved for summary judgment, arguing that it had owed no duty to warn, because the danger from diving into Lake Michigan without first ascertaining the depth of the water was open and obvious. *Id.* In each case, the trial court granted summary judgment to the District, but the appellate court reversed. *Id.* at 438. The supreme court reversed the appellate court, holding that the District had had no duty to warn.

¶ 21     As pertinent here, the court began with the general principle that possessors of land "are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Id.* at 447-48. This is because "[t]he open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.* at 448.

¶ 22     The court explained next that the existence of an open-and-obvious condition does not automatically bar the imposition of a duty. If the distraction exception applies, a duty might still exist. *Id.* at 448-52; see *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 27-28 (1992); *Deibert*, 141 Ill. 2d at 435-37; *Ward*, 136 Ill. 2d at 153; Restatement (Second) of Torts § 343A cmt. f, at 220 (1965). The distraction exception is an exception to the "general rule of no liability for open and obvious conditions." *Bucheleres*, 171 Ill. 2d at 451.

¶ 23     The court then turned to the facts of the cases before it. Somewhat backwardly, perhaps, it first held that the facts did not support the application of the distraction exception (*id.* at 452-53), then held that the danger to the plaintiffs had been open and obvious. Citing with approval *Dowen* and several other appellate court opinions (*id.* at 453-54), the court stated that "liability ordinarily does not arise because of the open and obvious risks associated with natural and artificial bodies of water" (*id.* at 454; see *Hagy v. McHenry County Conservation District*, 190 Ill. App. 3d 833, 836 (1989) (plaintiff dived into swimming hole without ascertaining depth of water); *Sumner v. Hebenstreit*, 167 Ill. App. 3d 881, 886 (1988)

(plaintiff dived into water-filled sand pit without ascertaining depth of water)). The court noted that the plaintiffs had not distinguished *Dowen* and the other opinions, which, like the plaintiffs' cases, all involved "open and obvious" conditions that "carr[ied] their own warning of possible danger." *Bucheleres*, 171 Ill. 2d at 455. Like the lake in *Dowen*, Lake Michigan, with its uncertain water levels and bottom composition, "present[ed] open and obvious risks to lakefront patrons who dive from concrete seawalls into the lake." *Id.* at 455-56.

¶ 24    Although the court rejected the application of the distraction exception to the open-and-obvious risk, it did not conclude that the District had thereby been freed from any duty. Instead, just as the applicability of the distraction exception did not automatically require imposing a duty on the defendant in *Ward*, so the inapplicability of the doctrine did not automatically require absolving the District of a duty. As in *Ward*, the court applied the four-factor test for determining a duty, recognizing that the application of two of the factors is essentially predetermined by the open-and-obvious rule. The court noted that, although "injuries from drowning and diving might be anticipated wherever there are lakes, swimming pools, and other bodies of water, the legal concept of [(1)] *reasonable* foreseeability of open and obvious conditions takes into account that *** people are generally assumed to appreciate the risks associated with such conditions and therefore exercise care for their own safety." (Emphasis in original.) *Id.* at 456-57. Further, in cases involving open-and-obvious dangers, "the law generally considers [(2)] the likelihood of injury slight *** because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks." *Id.* at 456. Thus, the first two factors will practically always favor the defendant in a case involving an open-and-obvious condition, at least where no exception is available. The first two factors greatly favored the District against the plaintiffs. *Id.* at 457.

¶ 25    The court then addressed the two remaining factors: (3) the burden on the defendant of guarding against injury and (4) the consequences of placing that burden on the defendant. The court concluded that they also favored the District. Requiring the District to take steps sufficient to prevent diving, such as fencing off the seawall areas or increasing the enforcement of the existing prohibition on diving, would create a substantial economic and practical burden. Moreover, the consequences of that burden might include curtailing the public's access to the lakefront and the beaches. Thus, the balance of factors compelled imposing no duty. *Id.* at 457-58.

¶ 26    We also note two recent and highly pertinent opinions of this court. (Curiously, neither party cites, much less discusses, either opinion.) In *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, the plaintiff dived headfirst into a lake off a boat about 400 feet offshore; the water was shallow and he struck his head on the bottom. The lake was 1 of 15 that comprised the Chain O' Lakes system. *Id.* ¶ 3. The trial court dismissed the plaintiff's complaint against the sheriff and the waterway agency. Affirming, this court held that the defendants had owed the plaintiff no duty to warn. We noted that, although the danger had been open and obvious, whether to impose a duty still depended on the four-factor test. *Id.* ¶ 26. The open-and-obvious rule implicated the first two factors: reasonable foreseeability and likelihood of injury. *Id.* ¶ 27. When a risk is open and obvious, these factors almost always militate strongly against imposing a duty, for the reasons noted in earlier opinions. That was so in *Bezanis*, given that the distraction exception did not apply. *Id.* ¶ 28.

¶ 27    We then discussed the final two factors and held that they also weighed against imposing a duty. *Id.* ¶ 29. To prevent people from diving into shallow waters far from shore, the defendants would need to undertake burdensome steps, such as measuring and remeasuring fluctuating water levels, posting floating warnings, and cordoning off some areas of the lakes in the Chain O' Lakes system. The effect would be to curtail the public's access to the lakes. *Id.* ¶ 30.

¶ 28    In the second post-*Bucheleres* opinion pertinent here, *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, the plaintiff's decedent was fatally injured when he jumped into a river to rescue a drowning boy near a dam. The trial court dismissed the plaintiff's negligence complaint, holding in part that the defendant had not owed a duty to warn the decedent or otherwise protect him against the danger. This court agreed and affirmed. *Id.* ¶ 21.

¶ 29    We started our duty analysis by noting that the open-and-obvious rule generally applies to the usual risks that are posed by a body of water: drowning and injury from diving. *Id.* ¶ 23. Next, we noted that the existence of an open-and-obvious danger, without any exception applying, does not automatically foreclose a duty; the four-factor test must still be undertaken. *Id.* ¶ 24. However, we then stated, " 'Nonetheless, for all practical purposes, *** if a danger is open and obvious, and [no] exception applies, there is no duty.' " *Id.* (quoting *Allen v. Martinez*, 348 Ill. App. 3d 310, 314 (2004)). "Thus, whether a duty exists to guard against harm from an open and obvious condition depends on whether an exception applies." *Id.* (citing *Sollami v. Eaton*, 201 Ill. 2d 1, 15-16 (2002)).

¶ 30    Essentially, then, in *Suchy* we recognized a *per se* rule for open-and-obvious conditions, albeit one with several moving parts: if (1) the condition is open and obvious; and (2) no exception applies, then there is no duty. The last two factors of the four-factor test, however strongly they militate in favor of imposing a duty, *cannot* outweigh the first two factors.

¶ 31    We must explain why we stated that the nominal four-factor test sometimes becomes a two-factor test in reality. We cited *Sollami* and *Martinez*'s application of *Sollami*. In *Sollami*, the minor plaintiff was injured while "rocket jumping" on a trampoline in her friend's yard. (In "rocket jumping," several people jump simultaneously in order to propel another person higher.) The plaintiff sued the trampoline manufacturer for product liability and also sued her friend's father (Eaton) for premises liability. The trial court granted both defendants summary judgment. The appellate court reversed, holding that the defendants had had a duty to warn the plaintiff of the dangers of jumping on the trampoline. The supreme court reversed the appellate court, holding that the case fell within the open-and-obvious rule; that no exceptions applied; and that the defendants had owed the plaintiff no duty.

¶ 32    The court held that "a reasonable 15-year-old teenager would appreciate the danger of rocket-jumping on a recreational trampoline." *Sollami*, 201 Ill. 2d at 14. Because the danger had been open and obvious, the manufacturer had owed the plaintiff no duty. *Id.* Turning to Eaton's liability as a landowner, the court first discussed whether any exception applied. The court considered both the distraction exception and the deliberate-encounter exception, which applies when the defendant can reasonably foresee that, generally out of some sort of compulsion, a person will recognize the risk and proceed to encounter it because, to a reasonable person in the same position, the advantages of doing so would outweigh the apparent risk. See *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 391 (1998). Neither exception applied. *Sollami*, 201 Ill. 2d at 15-17. Thus, the first two factors of the four-factor duty

- 7 -

test–the reasonable foreseeability of injury and the likelihood of injury–favored Eaton. *Id.* at 17.

¶ 33    The court quickly disposed of the last two factors. In essence, it read them out of the test:

"We also find that the last two factors–the magnitude of the burden of imposing the duty and the consequences of such a burden–do not favor imposing a duty on Eaton. The mere fact that Eaton may be aware that teenagers such as [the plaintiff] use his trampoline and may injure themselves while performing inappropriate maneuvers, such as rocket-jumping, does not translate into a legal duty to provide warnings or supervision or to prevent use of the trampoline altogether. See *Bucheleres*, 171 Ill. 2d [at] 457-58. Moreover, such *burdens are unjustified, given the open and obvious nature of the risk involved in this case.* We conclude that no legal duty should be imposed on Eaton." (Emphasis added.) *Id.* at 17-18.

Whatever *Bucheleres* had said about applying the four-factor test to a case in which (1) a risk was open and obvious and (2) neither exception applied, the *Sollami* court in essence held that, given (1) and (2), the case is over. Although *Sollami* formally addressed the last two factors of the test, it denied them any independent significance. The quoted passage did not state that the last two factors were outweighed by the first two factors; it did not purport to weigh the last two factors at all. It did not set out the magnitude of the burden that would result from imposing a duty on Eaton, or the consequences of imposing that burden. Instead, it held that, because the plaintiff failed the first two factors, she necessarily failed the last two factors. The court's approach contrasted sharply with *Bucheleres*, even though it cited *Bucheleres*. In *Bucheleres*, the court held that the first two factors disfavored the plaintiffs, yet it considered the last two factors in some depth. Whether the court would have held the District to a duty had these two factors strongly favored the plaintiffs is another matter. The point is that, unlike *Sollami* later on, *Bucheleres* implied that the last two factors have some independent significance even if the open-and-obvious rule applies.

¶ 34    In *Martinez*, this court recognized how *Sollami* had truncated the application of the traditional four-factor test. *Martinez* was also a premises-liability case based on a trampoline injury. In affirming summary judgment for the defendant, we explained that, as in *Sollami*, the danger had been open and obvious and neither exception applied. We noted that, formally, the *Sollami* court had applied the four-factor test. We explained, however:

"[F]or all practical purposes, *Sollami* holds that if a danger is open and obvious, and neither exception applies, there is no duty. Because the risk is obvious, the danger of injury is slight and the burden of guarding against it is unjustified. Thus, the result of the four-factor test is a foregone conclusion." *Martinez*, 348 Ill. App. 3d at 314.

¶ 35    Notably, the supreme court, in *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78 (2005), endorsed our interpretation of *Sollami*, albeit in what might appear to be *dicta*. In *Blue*, the plaintiff was injured at work when he stuck his foot into a trash compactor. As pertinent here, he sued the manufacturer, based on both strict liability and negligence; the strict-liability count was dismissed as untimely, but the jury found for the plaintiff on the negligence count, albeit reducing the award because of the plaintiff's comparative negligence. In answer to a special interrogatory, the jury specifically found that the danger had been open and obvious. The trial court held that the answer was inconsistent with the verdict, and it therefore entered a judgment for the manufacturer. The appellate court

reversed, reinstated the verdict, and remanded for the remaining postjudgment matters. *Id.* at 82.

¶ 36    The supreme court affirmed the appellate court. It held in part that the special interrogatory to the jury had been improper. This was because the question of whether a duty exists in a negligence case is one of law for the court; thus, whether the open-and-obvious rule bars recovery is also a question of law for the court. *Id.* at 112-13.

¶ 37    In affirming the appellate court, the supreme court discussed the application of the open-and-obvious rule to the action. The court noted that, in a defective-product case, no duty to warn exists if the risk is open and obvious. *Id.* at 101-02 (citing *Sollami*, 201 Ill. 2d at 7). However, the application of the open-and-obvious rule is different when the asserted basis of liability is not the failure to warn but rather defective design. *Id.* at 102. Thus, in a negligence case involving a defective product, the open-and-obvious rule strictly bars any duty to warn but does not necessarily bar recovery based on defective design.

¶ 38    What is most important for our purposes is the court's discussion of the application of the open-and-obvious rule to a premises-liability action against the party who controlled the property on which the plaintiff was injured. Having read *Sollami* as strictly barring a manufacturer's duty to warn of an open-and-obvious risk, the court then read *Sollami* as also barring a property owner's duty to warn of an open-and-obvious risk. The court noted the traditional four-factor test for determining a duty, but then, citing *Sollami* and *Martinez*, stated that, with an open-and-obvious risk, the result of the duty analysis in a negligence case "would be almost a foregone conclusion in some cases." *Id.* at 105. (Apparently, by "some cases," the court meant those based on premises liability as opposed to products liability.) After citing section 343A(1)'s statement of the open-and-obvious rule (Restatement (Second) of Torts § 343A(1), at 218 (1965)), the court continued:

> "Comment *e* to section 343A explains that a possessor of land may reasonably assume that one entering upon the land will protect himself by the exercise of ordinary care, or that the enterer will voluntarily assume the risk if he does not succeed in doing so. Restatement (Second) of Torts § 343A, Comment *e*, at 219 (1965). Reasonable care on the part of the possessor, therefore, does not ordinarily require precautions, or even a warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them. Restatement (Second) of Torts § 343A, Comment *e*, at 219 (1965). *This rule seems to excuse both the failure to warn and the failure to take precautions in relation to the condition on the land, as long as the danger was open and obvious to the plaintiff.*" (Emphasis added.) *Blue*, 215 Ill. 2d at 106.

¶ 39    This passage all but read section 343A to bar any duty whenever the risk is open and obvious and no exception applies–regardless of the import of the last two factors of the traditional four-factor test. The court did hedge by saying "seems to excuse" and not "excuses." Nonetheless, using the more decisive phraseology would have been consistent with the court's prior discussion. (The other hedging language, "does not ordinarily require precautions, or even a warning" is simply an acknowledgment of the limited exceptions for distraction and deliberate encounters.) And, although the foregoing passage is arguably *dicta*, it is, at least, "judicial *dicta*" that this court must respect as binding. See *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993).

¶ 40    We now return to *Suchy*. After concluding that the danger to the decedent had been open and obvious and that neither exception applied, we turned to the traditional four-factor test for determining a duty. We concluded that, because the open-and-obvious rule applied and the deliberate-encounter exception did not, the first two factors favored the defendants. *Suchy*, 2014 IL App (2d) 130367, ¶ 34. (The plaintiff had not raised the distraction exception.)

¶ 41    Next, although we had previously endorsed *Martinez*'s statement that, when a danger is open and obvious and neither exception applies, the result of the four-factor test is essentially a foregone conclusion (*id.* ¶ 24), we considered in some detail the remaining two factors: the magnitude of the burden resulting from imposing a duty and the consequences of that burden. Instead of collapsing these factors into the previous two (as had *Sollami*), we treated them as having independent significance (as had *Bucheleres*). We concluded that these factors "weigh[ed] somewhat" against imposing a duty, which would force the defendants to take measures, such as closing off certain areas, that would create a substantial burden. *Id.* ¶ 35.

¶ 42    The situation has perhaps been complicated further by the supreme court's recent opinion in *Bruns v. City of Centralia*, 2014 IL 116998, on which plaintiff relies in part. In *Bruns*, the plaintiff tripped and fell on an uneven sidewalk. The trial court granted the defendant (the City) summary judgment, based on the open-and-obvious rule. The appellate court reversed (*id.* ¶ 9), but the supreme court agreed with the City that the danger had been open and obvious (which the plaintiff now conceded) and that the distraction exception did not apply (*id.* ¶ 36).

¶ 43    The supreme court's treatment of the four-factor test is what concerns us here. The court began its duty analysis by reciting the four factors (*id.* ¶ 14), then summarizing the open-and-obvious rule (*id.* ¶ 16). It next addressed the applicability of the distraction exception–the primary issue before it–and held that the exception did not apply under the facts. *Id.* ¶ 34.

¶ 44    After establishing that the danger had been open and obvious and that no exception applied, the court noted that this did not end the duty inquiry. Interestingly, the court cited *Sollami* for this statement. *Id.* Thus, the court went on to address all four factors. The first two, of course, militated against imposing a duty. *Id.* ¶ 35 (citing *Bucheleres*, 171 Ill. 2d at 447-48 (reasonable foreseeability), and *Sollami*, 201 Ill. 2d at 17 (likelihood)).

¶ 45    Having disposed of the first two factors as was to be expected in an open-and-obvious case with no exception, the court turned to the remaining two factors. Interestingly (again), although the court cited *Sollami*, it apparently opted to deviate from *Sollami*'s approach–it did not simply collapse the last two factors into the first two, but spoke of them as essential considerations even in a case where the open-and-obvious rule applies without exception. The court wrote:

> "As to the third and fourth factors, we observe that the financial or other burden on the City of repairing this particular stretch of sidewalk, or otherwise protecting pedestrians from the sidewalk defect, is not [shown] in the record before us. But even if we assume that such burden is not great, the consequences of imposing that burden on the City would go well beyond the instant sidewalk defect. The City has miles of sidewalk to maintain. The imposition of this burden is not justified given the open and obvious nature of the risk involved. See [*Sollami*, 201 Ill. 2d at 18]. Accordingly,

we hold that the City had no duty to protect plaintiff from the open and obvious sidewalk defect." *Id.* ¶ 36.

*Bruns* does not appear to embrace *Sollami*'s essential abolition of the last two factors in cases where the open-and-obvious rule applies without exception. Its discussion of those factors was more than the formalistic "lip service" of *Sollami*. But it is worth noting that, aside from citing *Sollami* exclusively in its discussion, the court ultimately ruled against imposing a duty and stated that, if anything, the last two factors militated against the imposition of a duty. The court did not see the case as a test of whether *Sollami*'s *per se* rule ought to be followed even when the last two factors both militate strongly in favor of imposing a duty.

¶ 46    Thus, Illinois case law suggests two different approaches to the effect of the open-and-obvious rule on the application of the traditional four-factor duty test to premises-liability negligence actions. *Bucheleres*, *Bruns*, *Bezanis*, and *Suchy* can be read to hold that, even if the danger is open and obvious and neither exception applies, that means only that the first two factors favor the defendant, and the court must still consider the last two factors, which, in theory, might counterbalance the impact of the first two factors. However, *Sollami*, *Blue*, *Martinez*, and even *Bezanis* and *Suchy* can also be read to hold that, in this situation, the last two factors *cannot* outweigh the first two and the defendant necessarily has no duty, even if the burden of the duty and its consequences are minimal. Moreover, the latter reading appears more consistent with section 343A of the Restatement, on which our supreme court has relied.

¶ 47    We must now apply the foregoing analysis to the undisputed facts of this case. Based on *Dowen* and *Bucheleres*, we hold first that the risk in this case was open and obvious. *Dowen* is indistinguishable and, whatever effect *Bucheleres* (or the Act) might have had on other aspects of *Dowen*'s holding, the supreme court's straightforward endorsement of *Dowen*'s application of the open-and-obvious rule cannot be evaded. Moreover, *Bucheleres* cited several other opinions for the general rule that diving into water of an unknown depth presents an open-and-obvious risk, and our opinions in *Bezanis* and *Suchy* reiterated this general rule. Thus, the first part of our inquiry is easily resolved: the risk was open and obvious.

¶ 48    Plaintiff appears to contend that the risk was not open and obvious, or at least that the question of whether the risk was open and obvious should not have been decided by summary judgment. Plaintiff's arguments are not grounded in established law.

¶ 49    In the course of attempting to distinguish *Bucheleres*, plaintiff states that "[he] had reason to believe [that] the water in the area of the pier was sufficiently deep based on his observations throughout the day" and that these observations "provide additional factors for a jury to consider in determining whether the dangerous condition of the lake was open and obvious to a reasonable person in [the] [p]laintiff's position." This argument suffers from two major defects. First, the application of the open-and-obvious rule depends not on the reasonableness of the particular plaintiff's conduct, but on what it is reasonable for the defendant to anticipate. "The scope of [the] defendant's duty is not defined by reference to [the] plaintiff's negligence or lack thereof. The focus must be on [the] defendant." *Ward*, 136 Ill. 2d at 148. *Bucheleres* recognized as much. The mere fact that one plaintiff there had taken many successful dives off the seawall before (*Bucheleres*, 171 Ill. 2d at 440, 442) was of no consequence; neither was the fact that, just before diving, he had believed that the water was deep (*id.*).

¶ 50    Second, plaintiff ignores the premise of the application of the open-and-obvious rule to injuries that are caused by diving into open bodies of water. The *very uncertainty* of the water's depth places the onus of accuracy on the person who chooses to dive into it. The danger is "open and obvious" *not* because the plaintiff knows in advance that the water is shallow, but because he knows in advance *that it is a body of water and thus might be* too shallow for a safe dive. See *id.* at 453-54; *Dowen*, 191 Ill. App. 3d at 907. If the plaintiff guesses wrong, he cannot be heard to argue that his lack of " 'prior awareness of the depth of the waters' " (*Bezanis*, 2012 IL App (2d) 100948, ¶ 17 (quoting *Dowen*, 191 Ill. App. 3d at 907)) rendered the condition something other than open and obvious. In this context, the adage "look before you leap" is not a mere figure of speech. Indeed, under the law, more than looking is expected.[1]

¶ 51    Next, plaintiff argues that the risk was not open and obvious, because the evidence "[did] not support a finding that the shallowness of the lake was an open and obvious condition in the area at the end of the pier." Plaintiff posits that "[t]he open and obvious condition is not the lake itself, but rather shallow water." These statements ignore the case law. Again, as *Bucheleres*, *Dowen*, and *Bezanis* all state, the danger of a dive into water is "open and obvious" *not* because the plaintiff knows that the water is shallow, but because he knows that, as a body of water, it might be too shallow for a safe dive.

¶ 52    Finally, plaintiff argues that the risk was not open and obvious, because, by building the pier, defendant changed the obvious nature of the danger and made the water look deeper. *Dowen* rejected an essentially identical argument. The court stated, "defendants' pier did not create a 'new risk' which plaintiff was incapable of appreciating. The risk of striking the bottom of the lake during the dive existed with or without the pier." *Dowen*, 191 Ill. App. 3d at 910. Especially given *Bucheleres*'s approval of *Dowen* in this respect, we follow *Dowen*. Thus, we hold that the condition in this case was open and obvious.

¶ 53    We turn to the second step of our analysis: whether either exception to the open-and-obvious rule applies. This step is also not difficult. Plaintiff has never contended either that he was distracted from the risk or that some sort of compulsion made it reasonably foreseeable that he would proceed to encounter the known risk as the lesser evil. Obviously, plaintiff was not distracted; his whole attention was on diving into the lake. As obviously, the deliberate-encounter exception was not involved.

¶ 54    Thus, we come to the third step of the analysis: whether, given that the risk plaintiff encountered was open and obvious, and that no exception applied, the trial court correctly held that defendant owed plaintiff no duty. There can be no doubt that the first two factors of the four-factor duty test strongly favor defendant. Because the risk was open and obvious, injury was not reasonably foreseeable and the likelihood of injury was slight. This leaves one

---

[1]A third possible flaw in plaintiff's argument is that it assumes that whether a condition is open and obvious is, or can be, a question of fact. This assumption seems inconsistent with *Blue*, in which the supreme court stated that the question is one of law that may not be decided by the jury. *Blue*, 215 Ill. 2d at 112-13. However, there is authority (none of which plaintiff cites) that, when a condition is not open and obvious as a matter of law, the applicability of the open-and-obvious rule is a question of fact for the jury. See *Duffy v. Togher*, 382 Ill. App. 3d 1, 8 (2008); *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 203-04 (2000). We leave for another day whether all these authorities can be reconciled; under the facts of this case, the risk that plaintiff faced was, as a matter of law, open and obvious.

more inquiry: do the third and fourth factors–the burden that defendant would incur, and the consequences of imposing that burden–favor plaintiff to the extent that they outweigh the first two factors and thus call for imposing a duty?

¶ 55 We return to the divergence between the *per se* rule intimated, if not formally adopted, in *Sollami*, *Martinez*, and *Blue*, and the less rigid approach that appears to have governed in *Bucheleres*, *Bruns*, *Bezanis*, and *Suchy*. We acknowledge the inconsistency. Nonetheless, there is one consistent thread in the case law. No published premises-liability negligence case that we have found held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty. The courts have provided no authority in plaintiff's favor. Tragic as the facts of this case are, they are not extraordinary in a legal sense and do not call for a result that would appear to be without precedent.

¶ 56 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 57 Affirmed.